[1]UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FRANCOIS JOSEPH JAMES M.,[2]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

**DECISION AND ORDER**

6:20-cv-07123 (JJM)

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to Supplemental Security Income ("SSI") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [6, 7]. [3] The parties have consented to my jurisdiction [10]. Having reviewed the parties' submissions [6, 7, 8], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The parties' familiarity with the 479-page administrative record [5] is presumed. In January 2017, plaintiff filed an application for SSI, alleging disability beginning June 5, 2014 due to fibromyalgia, chronic back pain, depression, and anxiety. Id. at 43, 183, 211. After the application was denied, an administrative hearing was conducted before Administrative Law

---
[1]

[2]    In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[3]    Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

Judge ("ALJ") Addison Masengill on July 18, 2019, at which plaintiff, who appeared with an attorney, and vocational expert Frank Fazzolari testified. Id. at 60-94 (transcript of hearing).

Mr. Fazzolari testified that an individual with plaintiff's residual functional capacity ("RFC") could perform the jobs of assembler, sorter, and inspector. Id. at 91. In addition, he testified that an employer's tolerance for off-task time is a maximum of 10% within an 8-hour day. Id. at 92.

Based upon the medical evidence and testimony, ALJ Masengill found that plaintiff's severe impairments were "fibromyalgia, clubbed feet, migraine headaches, depressive disorder, social phobia, marijuana dependence, [and] degenerative disc disease of the lumbar spine". Id. at 45. In order to determine plaintiff's RFC[4], ALJ Masengill considered functional assessments from consultative examiner Harbinder Toor, M.D. and state agency medical consultant R. Dickerson, M.D.[5]

After conducting a physical examination, Dr. Toor[6] concluded that plaintiff had a "moderate limitation standing, walking, and sitting a long time" and a "moderate to marked limitation bending, lifting, and carrying". Id. at 403. He also concluded that "[p]ain and headache can interfere with his physical routine and activity". Id.

ALJ Masengill assigned "some weight" to Dr. Toor's opinion. Although she agreed that Dr. Toor's examination warranted limitations to "standing, walking, and sitting" and to "lifting and carrying", Dr. Toor's use of the terms "moderate" and "marked" to describe the

---

[4] Although ALJ Masengill incorporated both physical and mental limitations into plaintiff's RFC, plaintiff focuses his argument only on the medical opinions concerning plaintiff's physical limitations. See Plaintiff's Memorandum of Law [6-1] at 6-11. Accordingly, I discuss only those opinions.

[5] Dr. Dickerson's first name does not appear in the record.

[6] ALJ Masengill incorrectly referred to Dr. Toor as Dr. Harbinder. Administrative Record [5] at 52.

limitations was "vague" because Dr. Toor "did not define these words". Id. at 52. Moreover, ALJ Masengill noted that, with respect to the limitations for lifting and carrying, Dr. Toor's examination of plaintiff revealed "full motion of the shoulders, elbows, forearms, and wrists" and "5/5 strength". Id. She concluded that plaintiff's "pain did support a limitation with lifting and carrying, but not at the limitation he has alleged". Id.

After conducting a review of the medical evidence in the file, including the opinion of Dr. Toor, Dr. Dickerson determined the plaintiff could do "medium" work with a lifting restriction of up to 25 pounds frequently, and 50 pounds occasionally, due to plaintiff's alleged pain. Id. at 101, 104-05. He stated that, upon the consultative examination of Dr. Toor, "[t]here are 6 of 11 trigger points needed to diagnose fibromyalgia" and that there was "[n]o clear reason for disabling back pain . . . provided by extensive MRI evidence" in the record. Id. at 101. However, he assessed some postural limitations "due to back pain and limited ROM". Id. at 105.

ALJ Masengill assigned "little weight" to Dr. Dickerson's opinion, finding that plaintiff "is more limited than the DDS has opined, based on later adduced evidence and hearing testimony", specifically plaintiff's "history of fibromyalgia" and "whole body pain". Id. at 54. In addition, she considered other evidence in the record, such as plaintiff's testimony, his medical treatment records, diagnostic testing results, and findings upon examination of his primary care physician and chiropractor. Id. at 48-51.

Based upon the opinion and other evidence in the file, ALJ Masengill concluded that plaintiff had the RFC to perform light work, with several modifications:

> "[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant was limited to simple and routine tasks. The claimant is limited to no more than incidental

>exposure to the extreme cold and vibration.  The claimant is limited to no direct overhead lifting and reaching.  The claimant should not operate foot or leg control.  The claimant would need to change position from siting to standing and standing to sitting every 30 minutes as desired.  The claimant is limited to no more than occasional coworker or public contract.

Id. at 48.

Based upon the RFC and the vocational expert's testimony, ALJ Masengill determined that plaintiff was able to perform jobs that exist in significant numbers in the national economy, and therefore was not disabled, as defined in the Social Security Act.  Id. at 56-57. The Appeals Council found no basis to change ALJ Masengill's decision. Id. at 1-4. Thereafter, this action ensued.

## DISCUSSION

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

Plaintiff argues that ALJ Masengill rejected all the opinions concerning his physical limitations, creating a gap in the record that she impermissibly filled with her own lay

opinion. Plaintiff's Memorandum of Law [6-1] at 6. He contends that ALJ Masengill "erred in rejecting all of the opinion evidence and deciding the RFC with reference to her own lay judgment. Her reference to lay judgment is clear in that she interpreted the results of Plaintiff's imaging findings and objective examinations, while rejecting the opinion evidence as vague or unsupported". Id at 6. He argues that ALJ Masengill's "failure to clarify the opinion" of Dr. Toor, while conceding the vagueness of the terms "moderate" and "marked", but "deciding the RFC in any event, was also error". Id. at 8. Moreover, plaintiff asserts "that the ALJ's errors were particularly harmful because she found a very specific sit/stand limitation, but nowhere explained how she arrived at that limitation". Id. at 9. Finally, plaintiff argues that the "RFC also includes absolutely no off-task limitations that would account for Dr. Toor's opinion that '[p]ain and headache can interfere with his physical routine and activity'". Id. at 11.

The Commissioner responds that ALJ Masengill's decision concerning plaintiff's RFC is supported by substantial evidence and specific citations to the record, including the portions of Dr. Toor's medical opinion that she found persuasive, information in plaintiff's medical records (*i.e.* diagnostic study reports, findings upon examination, and treatment notes), and plaintiff's own testimony. Commissioner's Memorandum [7-1] at 9-21. The Commissioner argues that "[p]laintiff has not shown that he needs a more restrictive RFC finding than the one assessed by the ALJ as is his burden", nor has he "established that he needed more breaks than are normally permitted". Id. at 17, 18. For the following reasons, I agree with the Commissioner.

**B.     Did ALJ Masengill Support the RFC with Substantial Evidence?**

It is the ALJ's responsibility to "weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Matta v. Astrue, 508 F. App'x 53,

56 (2d Cir. 2013) (Summary Order).  In doing so, an ALJ may not "arbitrarily substitute [his/her] own judgment for competent medical opinion." Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir. 2020) (Summary Order).

However, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence." Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022).  Moreover, "[w]here . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity . . . a medical source statement or formal medical opinion is not necessarily required". Monroe v. Commissioner of Social Security, 676 F. App'x 5, 8 (2d Cir. 2017) (Summary Order). *See also* Corbiere v. Berryhill, 760 Fed. App'x 54, 57 (2d Cir. 2019) (Summary Order) (despite the absence of a medical source statement regarding the plaintiff's work related functional abilities and an MRI that revealed "a small L4-5 disc protrusion and mild L4-5 facet joint changes", treatment records indicating that the plaintiff could "stand and walk without difficulty" and had "full lower extremity strength" constituted substantial evidence for the RFC); Cook v. Commissioner of Social Security, 818 F. App'x 108, 109-10 (2d Cir. 2020) (Summary Order) ("although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity. Here, the treatment notes were in line with the ALJ's RFC determinations").

Even where an ALJ does not assign controlling weight to any of the medical opinions in the record, she is nonetheless empowered to craft an RFC so long as evidence in the record supports her findings.  *See* Schillo, 31 F.4th at 78 (rejecting the argument that "having declined to afford controlling weight to any of the three physicians' opinions, the ALJ was . . .

prohibited from making an RFC finding whatsoever"). By departing from those opinions, however, the ALJ was required to use the treatment notes, diagnostic tests, medical opinions, and other "data points" to identify "with specificity" how the RFC was formulated. Id. at 78 ("the ALJ accorded the treating physicians' opinions lesser and not no weight, she still considered their conclusions to assess Schillo's RFC. The ALJ also looked to the other sources in the administrative record, including MRI results, x-ray results, and notes documenting Schillo's visits with other medical providers. Using these opinions and data points, the ALJ laid out with specificity Schillo's physical capabilities"). For the reasons that follow, I conclude that ALJ Masengill properly exercised that authority.

ALJ Masengill noted that Dr. Toor did not define the words "moderate" and "marked" that he used to describe the opined limitations, rendering use of those terms "vague". Administrative Record [5] at 52. She explained further that "[t]herefore there is no clear indication as to the duration or weight limits upon these functions". Id. Plaintiff argues that ALJ Masengill "rejected" this medical opinion. Plaintiff's Memorandum of Law [6-1] at 6. However, ALJ Masengill's analysis did not stop there. She went on to credit much of Dr. Toor's opinion, concluding that plaintiff had limitations in nearly all the functional activities opined by Dr. Toor: standing, walking, sitting, lifting, and carrying. Administrative Record [5] at 52.

ALJ Masengill found plaintiff has the RFC to do light work, with some limitations. Id. at 47-48. First, courts in this circuit have frequently held that a restriction to light work accounts for moderate functional limitations. See White v. Berryhill, 725 F. App'x 80, *81-82 (2d Cir. 2019) (Summary Order) (finding that substantial evidence supported an RFC "to perform a modified version of light work" where the record contained a doctor's opinion stating plaintiff had "'moderate limitations' in standing, sitting, and performing other

activities"); Amons v. Astrue, 617 F.Supp.2d 173, 176 (W.D.N.Y. 2009) (finding that substantial evidence supported ALJ's determination that plaintiff retained the RFC to perform a full range of light work with some additional limitations where examining physician reports reflected "moderate limitations in walking, standing, squatting, climbing and reaching").  Further, to support the specifics of her RFC, ALJ Masengill cited to specific data points in the record. Plaintiff argues that the ALJ "found a very specific sit/stand limitation, but nowhere explained how she arrived at that limitation".  Plaintiff's Memorandum of Law [6-1] at 9.  However, ALJ Masengill cited to plaintiff's responses on the activities of daily living questionnaire that he submitted in support of his claim.  There, plaintiff stated he could stand and walk for 30 minutes. Administrative Record [5] at 48, 202.  Moreover, even with this sit/stand limitation included, the vocational expert testified that plaintiff was capable of performing three light work positions.  Id. at 90-91.

Further, as pointed out by the Commissioner ([7-1] at 9-12), and in addition to Dr. Toor's opinion, ALJ Masengill analyzed and cited information in the Administrative Record to further support her determination that plaintiff's severe conditions were not disabling:

- Plaintiff's testimony concerning his medical history, treatments, and daily activities;

- Plaintiff's questionnaire concerning activities of daily living;

- 2012 MRI results showing "mild degenerative changes involving the lumbar spine";

- 2016 MRI results showing "degenerative changes and signs of degenerative disc disease in the mid and distal lumbar spine";

- Treatment notes from plaintiff's treating provider from 2014 through 2017; and

- Treatment notes from plaintiff's chiropractor from 2019.

Administrative Record [5] at 49-51.  I find that the totality of these "data points" are sufficient to support the RFC.

Plaintiff's final arguments are that "the RFC also conflicts with Dr. Toor's limitations of moderate *to marked* limitations in lifting and carrying, as light work is the second least restrictive work level" and "[t]he ALJ's RFC also includes absolutely no off-task limitations that would account for Dr. Toor's opinion that 'pain and headache can interfere with his physical routine and activity".  Plaintiff's Memorandum of Law [6-1] at 11.  I disagree.  First, plaintiff failed to cite any medical evidence demonstrating that he required additional limitations in his RFC related to sitting and standing, lifting and carrying, or off-task time.  "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).

Moreover, ALJ Masengill explained in her Decision why she did not include additional limitations in the RFC related to lifting and carrying, and to off-task time.  With respect to Dr. Toor's opinion concerning a moderate to marked limitation in lifting and carrying, she stated:

> "[T]here was a limitation with lifting and carrying, but the undersigned finds it is at the light level, and again, marked is not defined.  In fact, during the examination, he had full motion of the shoulders, elbows, forearms, and wrists and had 5/5 strength.  His pain did support a limitation with lifting and carrying, but not at the limitation he has alleged."

Administrative Record [5] at 52.

With respect to off-task time, the ability of a claimant to stay on task during the workday and maintain regular attendance is part of the functional ability to concentrate, persist, and maintain pace:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1. ALJ Masengill found that plaintiff "had a moderate limitation . . . with concentrating, persisting, or maintaining pace". Administrative Record [5] at 47, 52. Plaintiff does not challenge this finding. Further, substantial evidence supports the ALJ's conclusion.

First, Dr. Toor's statement that "[p]ain and headache *can* interfere with his physical routine and activity" includes no characterization of how often, or even if, such interference could occur. This statement is even more vague in terms of a functional assessment than words like "moderate" and "marked". In any event, ALJ Massengill considered how plaintiff's physical conditions would impact his ability to stay on task. "Specifically, the claimant had a history of fibromyalgia, which when combined with his mental health limitations would affect his concentrating, persisting, or maintaining pace". Administrative Record [5] at 54. In addition, ALJ Masengill also considered plaintiff's allegations concerning headaches. She noted that plaintiff "alleged headaches every other day, lasting hours long; however the records do not support this frequency. He was also frequently described as alert and oriented despite these alleged migraine headaches". Id. at 55.

Second, she rejected the opinion of consultative psychiatric examiner Christine Ransom, PhD, that there was "no evidence of limitation" in this domain:

> "The undersigned finds the minimal limitations noted within the examination are overall fairly consistent with the record, however, the undersigned finds that when viewing the evidence in a light most favorable to the claimant, including hearing testimony, the claimant had a moderate limitation interacting with others and with concentrating, persisting, or maintaining pace"

Administrative Record [5] at 54. Notwithstanding the lack of medical evidence supporting the need for non-exertional limitations, ALJ Masengill gave the plaintiff the benefit of the doubt and credited some of plaintiff's subjective complaints by including restrictions to accommodate for limitations in this domain. Id. at 27. This was not an error. See Ramsey v. Commissioner of Social Security, 830 F. App'x 37, 39 (2d Cir. 2020) (Summary Order) (finding no error where the ALJ "occasionally deviated from consultative examiners' recommendations to *decrease* Ramsey's RFC based on other evidence in the record" (emphasis in original)); Deborah Elaine L. v. Commissioner of Social Security, 2022 WL 2662974, *4 (W.D.N.Y. 2022) ("[i]t . . . was not error for the ALJ to afford Plaintiff the benefit of the doubt and assess additional non-exertional limitations despite the lack of support for such limitations in the medical evidence of record. The additional non-exertional limitations assessed by the ALJ are related to Plaintiff's own testimony").

Finally, ALJ Masengill's limitation of plaintiff to "simple and routine tasks" accounts for up to moderate limitations in this domain. Uplinger v. Berryhill, 2019 WL 4673437, *7 (W.D.N.Y. 2019) ("the ALJ appropriately incorporated marked limitations in dealing with stress and moderate limitations in maintaining a schedule into plaintiff's RFC by limiting plaintiff to work in a low stress work environment reflected by simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes and limiting her to frequent interaction with

supervisors and occasional interaction with coworkers and the general public"); *see also* Shannon v. Berryhill, 2018 WL 6592181, *3 (W.D.N.Y. 2018) ("[t]here is significant case law indicating that the ALJ's limitation of Plaintiff to 'simple, routine tasks' and 'working primarily alone, with only occasional supervision' accounts for her [moderate] limitations for performing activities within a schedule and maintaining regular attendance"); Landers v. Colvin, 2016 WL 1211283, *4 (W.D.N.Y. 2016) ("[p]laintiff fails to demonstrate that these moderate limitations require the finding of a more limited RFC. The determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance").

Accordingly, ALJ Masengill's findings concerning plaintiff's RFC were supported by substantial evidence. She supported her RFC with specific citations to the record. She neither mischaracterized nor cherry-picked the record to support her conclusions. She did not ignore evidence of more significant limitations. Therefore, I find that her conclusions concerning plaintiff's RFC are supported by substantial evidence. That is, a "reasonable mind might accept" ALJ Masengill's reasoning "as adequate to support her conclusion". Consolidated Edison Co., 305 U.S. at 229.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [7] is granted, and plaintiff's motion [6] is denied.

 **SO ORDERED**.

Dated: March 29, 2023                                     /s/   Jeremiah J. McCarthy
                                                            JEREMIAH J. MCCARTHY
                                                            United States Magistrate Judge